## Devlin *versus* Commonwealth, to use, &c.

| 101 | 273 |
|---|---|
| 21 SC | ¹344 |
| 101 | 273 |
| h206 | ¹473 |
| 206 | ¹474 |

1. The grant of letters of administration by the register of wills upon the estate of a person who, having been absent and unheard-from for fifteen years, was presumed to be dead, but who, as it afterwards appeared, was in fact alive, is an act absolutely void, which can be impeached collaterally.

2. A voluntary payment to the administrator under such appointment is no defense to a subsequent action by the supposed decedent.

3. Aliter, if the payment to such administrator had been made under the compulsion of a court of competent jurisdiction.

4. Jochumsen v. Savings Bank, 3 Allen 87, followed ; Miller v. Beates, 3 S. & R. 490, distinguished.

October 10th 1882.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county :* Of October Term 1882, No. 121.

Debt, by the Commonwealth of Pennsylvania for use of Mary B. Devlin against John F. Devlin and Joseph F. Devlin upon a recognizance given by the defendants.

The following case stated was agreed upon by the parties and submitted to the Court.

" Peter D. Devlin died intestate, in 1866, seised of certain real estate which was partitioned at No. 3, September Term, 1867, John F. Devlin, the eldest son of the decedent, taking the said real estate at the appraisement, and entering into recogniz-ance for payment of the distributive shares.   After settlement

5 OUTERBRIDGE—18

[Devlin *v.* Commonwealth, to use, &c.]

of the debts, the balance of the fund arising from the realty was distributed under the intestate law of Pennsylvania, amongst the several heirs at law of Peter D. Devlin. On said distribution, James Devlin, one of the sons of the said decedent, being dead, his share was allotted to his three children: James P., Martha and Mary B. Devlin. Their respective portions of said shares were paid to James and Martha, and said Mary having been absent and unheard-from for more than seven years, upon the presumption of her death, letters of administration on her estate were granted to her brother, James P. Devlin, and payment of her portion of said share made to him, as such administrator.

" This action is brought by Mary B. Devlin, who was erroneously supposed to be dead, against John F. Devlin the cognizor, and Joseph F. Devlin his surety, to recover her portion of said distributive share, which, with the interest accrued thereon, now amounts to the sum of $880.39, and the defendants set up payment to said administrator in bar of the action.

" If, on the above facts, the court should be of opinion that the defendants are liable, they will enter judgment for the plaintiff in the sum of $880.39, with interest thereon, from February 8th 1882, and if the court should be of opinion that the defendants are not liable they shall enter judgment in favor of the defendants, with cost of suit. Both parties, plaintiff and defendants, expressly reserve their right to a writ of error."

The court, in an opinion filed by EWING, P. J., entered judgment for the plaintiff on the case stated, whereupon the defendant took this writ of error, assigning for error the said judgment.

*C. S. Fetterman* (with him *E. A. Montooth* and *S. A. Johnston*), for the plaintiff in error.—The grant of letters of administration by the register is a judicial act, and until such letters be revoked, all persons acting by virtue of their authority are protected: Roderigas' Adm'rs. *v.* East River Savings Institution, 15 Amer. Law Register, 205 ; Miller *v.* Beates, 3 S. & R. 490. The defendants in this case could not have resisted the demand of the administrators for payment of the amount due the estate of the supposed intestate on the ground that the latter was only presumptively dead and might in fact be alive. Payment by the defendants, therefore, to the lawful administrators is a bar to a second action brought by the supposed intestate. As the law originates the presumption that a person unheard-from for more than seven years, under circumstances similar to those in the present case, is dead, and will enforce payment from debtors of the person presumed to be dead to administrators, duly appointed in recognition of such presumption, it

would be highly inequitable not to protect parties so paying from all future demands for the same debt.

C. A. O'Brien (with him Breil and Fitzpatrick), for the defendant in error.—The grant of letters of administration is a judicial act only when the register has jurisdiction, and the law invests him with jurisdiction only over the estates of dead persons. The presumption of death arising from prolonged absence is a disputable one, and when overthrown by the appearance of the absentee, it leaves no ground for sustaining jurisdiction of any act based upon the presumption of death: Jochumsen v. Savings Bank, 3 Allen 87 ; Allen v. Dundas, 3 Term Rep. 125 ; Griffith v. Frazier, 8 Cranch 9 ; McPherson v. Cunliff, 11 S. & R. 431.

Mr. Justice GORDON delivered the opinion of the court, November 20th, 1882.

Notwithstanding the long absence of Mary B. Devlin, the plaintiff below, from the state of Pennsylvania, and although it may be, as alleged in the statement of the plaintiffs in error, that she had been unheard-of for a period of fifteen years prior to the date of the issuing of letters of administration on her estate, yet the fact turns out to be that at that time she was alive. It follows, that those who undertook to act upon the presumption of her death must bear the consequences of the failure of that presumption. Let it be that the fact of so long an absence would, in many instances, raise a legal presumption of her death, yet, we presume, no one will contend that this legal presumption might not be successfully rebutted by proof that the person whose death it was thus sought to establish, was in full life. Let us take, for example, a son, under circumstances like those above stated, assuming the death of his father, and, on that assumption, as heir, selling the father's land. Should the supposed decedent afterwards appear, the title of the son's vendee would be utterly void ; yet in this hypothetical case, the sale is supposed to be made on a legal presumption, which, so long as it continues, is perfectly good, and one on which the vendor might successfully defend in an action for a breach of the warranty of title. But in the case put, the son's title breaks down just where the defence to the plaintiff's claim, in the case in hand, breaks down—that is, upon a failure of the presumption upon which the parties acted. Presumptively the son had power to sell, in fact he had no such power ; presumptively the register had power to issue letters of administration on the estate of Mary B. Devlin, but in fact he had no such power. We cannot, therefore, but approve of what was so well said by the learned judge of the court below, i. e., that the presumption interposed by the defendants to defeat the

plaintiff's recovery was not even an important element in the case; it was but evidence from which the register might assume the death of Mary B. Devlin, but it was no more conclusive than would have been the testimony of false witnesses to prove the same thing.

It might, indeed, be true, that were we to concede to the register judicial powers of a general character, as was conceded to the surrogate of the State of New York, in the case of Roderigas *v.* The East River Savings Bank, 63 N. Y. 460, the decree in the case in hand might be regarded as conclusive until reversed; but we are not disposed to regard this case as authority; its standing as such is not only very much weakened by the dissent of three of the seven judges who composed the court, but, as was said by Judge. REDFIELD, in his note to this case, 15 Am. L. R. (N. S.) 212, the case is perhaps without precedent either in America or England.

But whatever may be the surrogate's jurisdiction under the statutes of New York, certain it is that under our Act of 15th of March 1832, the register's powers are special and limited. By that Act he has power to issue letters of administration on estatés of dead persons only, and not on estates of the living. His decrees are final and conclusive until reversed by a superior tribunal, when, under the statute, he has jurisdiction; but if made without jurisdiction they are worthless and void, and may be impeached in any collateral proceeding.

That this granting of letters upon the estate of a living person, though supposed to be dead, is not only a voidable but a void act, is a legal conclusion supported by abundant authority. In McPherson *v.* Cunliff, 11 S. & R. 422, Mr. Justice DUNCAN shows the distinction between those acts of the Orphans' Court which are voidable only and those which are wholly void. He says, that that which gives jurisdiction to the Orphans' Court, is the death of the owner of the estate, and that if letters of administration were taken on the effects of a living man, or of one who died testate, the administration would be void, and there would be no administrator to act, no party before the court, consequently all the proceedings would be null; but that where an executor obtains payment on a void will, such payment cannot be impeached, notwithstanding the probate was afterwards declared to be invalid. The distinction between the cases thus stated, he explains by saying, the probate on the will of a living person is ipso facto void, because of the want of jurisdiction, but where the person is dead, the Orphans' Court has power over his estate, and one acting on the faith of its decrees will be protected.

This is pretty much a re-statement of the case of Allen *v.* Dundas, 3 Durnf. & East, Term R. 129, 130, in which Justices ASHHURST and BULLER hold precisely the same opinion. So the

argument made use of by Chief Justice MARSHALL, in Griffith *v.* Frazier, 8 Cranch 23, is of like import; he says : " In the common case of intestacy, it is clear that letters of administration must be granted to some person by the ordinary ; and though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority ; because he had power to grant letters of administration in the case. But suppose administration be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet the ordinary must always inquire and decide whether the person whose estate is to be committed to the care of others, be dead or in life. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint, with the character or powers of an administrator. The case, in truth, is not one within his jurisdiction. It is not one in which he has a right to deliberate. It was not committed to him by law, and although one of the points occurs in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction." At the risk of being considered tedious, I have thus quoted at some length from the opinion of the Chief Justice, for I regard it as settling, so far as persuasive authority can go, the case in hand.

Furthermore, in the case of Jochumsen *v.* Suffolk Savings Bank, 3 Allen 87, we have a case directly in point. In that case it was held, by the Supreme Court of Massachusetts, that a depositor in a savings bank might recover a deposit, though the amount had been previously paid to an administrator appointed under the erroneous presumption of the depositor's death arising from his absence for more than seven years without being heard from.

DEWEY, Justice, who delivered the opinion, fully sustains the judgment of the court by an able argument and the citation of numerous authorities. To my mind, he very clearly proves that the decree of a probate judge in granting letters, under the circumstances stated, may be collaterally attacked and avoided for the want of jurisdiction. He remarks, inter alia, the position is that seven years' absence from home without being heard from, authorizes the probate judge to treat the case as though the party were dead. But he exposes the error contained in this proposition by calling attention to the fact, that the circumstances alleged are but evidences of death, and that they may be rebutted by showing the fact to be otherwise; hence, the presence of the supposed dead man leaves no ground on which to support the jurisdiction. We think this is sound reasoning and worthy of our adoption. Under a contrary doctrine a living man might be obliged to stand by and see the administration of his own estate, or he might be forced to cite

his executor or administrator to account in order that he might be enabled to get possession of the remains of his own property.

Among several cases, to which our attention has been directed by the counsel for the plaintiff in error, is that of Miller *v.* Beates, 3 S. & R. 490, where, on the presumption of the death of one John G. Schlosser, arising from absence of many years without being heard from, a legatee over was permitted to recover without being required to give a refunding bond. Here, however, there was no pretence in the way of evidence to rebut the presumption of the death of the first taker, hence, nothing to impeach the decree of the register. More than this, the executor was fully protected by the judgment of a court having undoubted jurisdiction over the parties, and whose judgment could not be collaterally contested. There is, therefore, no kind of analogy between this case and the one in hand. Had John F. Devlin been compelled, by a court of competent jurisdiction, to have paid to the administrator the money in controversy, his case would have been very different, but having voluntarily made payment to one whose authority was, at best, but prima facie, he assumed all risks, and must now bear the consequences of the failure of that assumption.

The judgment is affirmed.