## Cunnius v. Reading School District, Appellant.

*Constitutional law—Constitution of the United States—Fourteenth amendment—Estates of persons supposed to be dead—Act of June 24, 1885, P. L. 155.*

The act of June 24, 1885, in so far as it authorizes the distribution of the estate of a living citizen of the United States domiciled in a sister state violates the fourteenth amendment of the constitution of the United States and is invalid. The vice of the statute is not in the form of the decree which the court is authorized to enter, but in divesting an owner of his property by a proceeding to which he is not a party, and of which he has had no notice.

A state has jurisdiction over persons and property within its boundaries, and may make a law, the purpose of which is the collection of abandoned estates, with proper provisions for the preservation of the property, or the proceeds thereof for the owner, but it has no power to divest the title of a living but absent owner, and give it to others.

Argued Nov. 12, 1901. Appeal, No. 48, Oct. T., 1901, by defendant, from judgment of C. P. Berks Co., Aug. T., 1899, No. 64, on verdict for plaintiff in case of Margaret Cunnius, now Margaret Smith, v. Reading School District. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover arrearages of dower. Before END-LICH, J.

At the trial it appeared that plaintiff claimed to recover the sum of $569.61, being arrearages of dower from April, 1888, with interest thereon.

The facts are fully stated in the opinion of the Superior Court.

The court instructed the jury to return a verdict for plaintiff for $609.60, subject to the following points reserved :

1. Whether, in view of the proceedings in the orphans' court to No. 91, January term, 1897, there can be any recovery by the plaintiff in this case.

2. Whether, in view of the proceedings in the orphans' court to No. 91, January term, 1897, there can be any recovery in this case beyond May 16, 1898.

3. Whether in this case, if the plaintiff is entitled to recover, she can recover more than the arrearages with simple interest.

The court entered judgment for $410.04.

*Error assigned* was the judgment of the court.

*Walter S. Young*, for appellant.—The act of 1885 enlarges the jurisdiction of the orphans' court by giving it control over the estates of persons presumed to be dead. This implies full authority to make such orders and decrees as may be necessary to carry into effect the purposes for which jurisdiction is conferred; Lowry's Appeal, 114 Pa. 219; Miskimins's Appeal, 114 Pa. 530; Johnson's Appeal, 114 Pa. 132; Shollenberger's Appeal, 21 Pa. 337; People v. Chapin, 11 N. E. Repr. 513; Stief v. Hart, 1 N. Y. 20; Beallsville Sch. Dst. 24, 21 Pa. C . C R. 644.

The act of June, 1885, is a valid exercise of legislative power, and the court clearly erred in declaring it a nullity. The general rule is that " a statute shall be so construed as that it may all stand, and no part be rejected or declared inoperative ; " Cadbury v. Duval, 10 Pa. 270; Ihmsen v. Monongahela Navigation Co., 32 Pa. 157; Big Black Creek Imp. Co. v. Com., 94 Pa. 450; Fuelhart v. Blood, 11 Pa. Superior Ct. 273.

The orphans' court had jurisdiction to pronounce the decree that the legal presumption of plaintiff's death had been established, and until this decree is properly vacated by that tribunal and the grant of letters revoked, the plaintiff has no standing in a collateral proceeding to question its correctness : Painter v. Henderson, 7 Pa. 48; Keech v. Rinehart, 10 Pa. 242.

*Caleb J. Bieber*, for appellee.—The act of 1885 is unconstitutional: Scott v. McNeal, 154 U. S. 34; Roderigas v. East

River Savings Institution, 63 N. Y. 460 ; Carr v. Brown, 20 R. I. 217 ; Stevenson v. Superior Ct., 62 Cal. 61 ; Devlin v. Com., 101 Pa. 276.

The proceedings for the administration of a person's estate presuppose that he is dead; if he is alive, the court is without jurisdiction, and its proceedings are null and void even in a collateral proceeding: Hamilton v. Brown, 161 U. S. 268 ; Devlin v. Com., 101 Pa. 273 ; Lavin v. Imigrant Industrial Savings Bank, 1 Fed. Repr. 671. .

" Due process of law" means a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights: Pennoyer v. Neff, 95 U. S. 714 ; Carr v. Brown, 38 Atl. Repr. 10.

Those rules require that there shall be a court of competent jurisdiction to pass upon the subject-matter of the suit or proceeding, and that there shall be a trial or proceeding in which the rights of the parties, after notice and opportunity to be heard, shall be duly adjudicated: Carr v. Brown, 38 Atl. Repr. 10.

The appointment of an administrator is a proceeding in rem, where the jurisdictional fact of death actually exists: Monroe v. People, 102 Ill. 406.

Payment of money to an administrator under such circumstances is no defense to a subsequent action by the supposed decedent: Devlin v. Com., 101 Pa. 276 ; Scott v. McNeal, 154 U. S. 34.

OPINION BY W. D. PORTER, J., October 13, 1902:

The defendant was the owner of certain land which was subject to a right of dower of the plaintiff, the value of which dower right had been ascertained and the amount of the annual instalments to be paid duly fixed. The installments had been paid down to and including that for the year 1888, to which time the domicile of the plaintiff had been in the city of Reading, in the state of Pennsylvania. The plaintiff, in the year 1888, left the state of Pennsylvania and nothing was seen or heard of her until the bringing of this action, in 1899. The only son of the plaintiff continued to reside at Reading and, on March 17, 1897, presented his petition to the register of wills,

praying that letters of administration upon the estate of his mother, the plaintiff, be issued to him. The ground upon which the petition for administration was founded being the presumption of the death of the plaintiff, on account of her absence for more than seven years from the place of her last domicile in this commonwealth, the application was by the register certified to the orphans' court of the county, and the subsequent proceedings were conducted in accordance with the provisions of the Act of June 24, 1885, P. L. 155, entitled, " An act relating to the granting of letters of administration upon the estates of persons presumed to be dead by reason of long absence from their former domicile." The court after a hearing decreed that the legal presumption of death was established by the evidence. After notice by publication, in accordance with the requirements of the statute, letters of administration upon the estate of Margaret Cunnius were, on January 29, 1898, granted to John S. Gallagher. The defendant paid to this administrator all the installments upon the dower charge, and received from him an absolute release of the dower right. The plaintiff, on June 30, 1899, brought this action to recover the annual installments accruing from her statutory right of dower after the last payment to her, in 1888. The defendant relied upon the provisions of the act of June 24, 1885, the decree of the orphans' court made under the jurisdiction supposed to be conferred by the act, and the payment to the administrator made in accordance with the statutory provisions. The plaintiff, under the objection of the defendant that the decree of the orphans' court could not be attacked collaterally, proved that she was still living, that in the year 1888 she had acquired a domicile in the city of Sacramento, in the state of California, and had there resided ever since that time.

A verdict was taken, by consent of the parties, in favor of the plaintiff subject to the opinion of the court upon questions of law reserved, which are thus stated in the record: (1) " Whether, in view of the proceedings in the orphans' court of the county of Berks, to No. 91, January term, 1897, there can be any recovery by the plaintiff in this case." (2) " Whether, in view of the proceedings in the orphans' court to No. 91, January term, 1897, there can be any recovery in this case beyond May 16, 1898."

The proceedings in the orphans' court for the administration of the estate of the plaintiff, upon the presumption that she was dead, were in strict accord with the provisions of the act of 1885. If the proceeding was invalid it was so because of some vice in the statute, and not because of a failure to comply with the provisions thereof. The decree of the orphans' court must in any collateral proceeding be accepted as conclusive, if the parties and the subject-matter were within its jurisdiction. The attack of the plaintiff upon the decree was collateral. Her right to recover is, therefore, dependent upon the constitutionality of the statute of the state of Pennsylvania, which while she was living authorized the administration of her estate, without personal notice to her, as if she were dead. She invokes the protection which the fourteenth amendment to the federal constitution gives to the citizen against encroachment by the state, in the provision, " Nor shall any state deprive any person of life, liberty or property, without due process of law." This restriction upon the power of the state applies to the legislative as well as to the judicial department of its government.

It had been the practice, prior to the enactment of this statute, for the register of wills to issue letters for the administration of estates of persons who have been absent and unheard of for seven years. After an unexplained absence of seven years, the law presumed the absentee to be dead, and this presumption was as effective as direct proof of the fact: Appeal of Esterly, 109 Pa. 222. The jurisdiction of the register to grant letters was limited to the estates of the dead. The grant of letters on the estate of a person who had been absent and unheard of for seven years was founded upon the presumption of death arising from that fact, and was prima facie valid. This presumption was not conclusive; it might be rebutted, even in a collateral proceeding, and if the person was in fact alive the jurisdiction failed and the letters of administration were void: Devlin v. Commonwealth, 101 Pa. 273. The act of 1885 deprived the register of jurisdiction to issue letters in those cases in which the absence of the party was the only evidence of death. That legislation requires the register to certify applications for administration of this character to the orphans' court of the county; the court is then required to advertise " the fact of said application together with notice

that on a day certain the court will hear evidence concerning the alleged absence of the supposed decedent," in a newspaper published in the county, once a week for four successive weeks. At the hearing the court shall hear such legal evidence as shall then be offered, for the purpose of ascertaining whether the presumption of death is established. "Section 3. If satisfied upon the hearing, that the legal presumption of death is made out, the court shall so decree, and shall forthwith cause notice thereof to be inserted for two successive weeks in a newspaper published in the county, and also when practicable in a newspaper published at or near the place beyond the commonwealth, where, when last heard from, the supposed decedent had his residence. The said notice shall require the supposed decedent, if alive, or any other person for him, to produce to the court within twelve weeks from the date of its last insertion satisfactory evidence of his continuance in life. Section 4. If, within the said period of twelve weeks, evidence satisfactory to the orphans' court of the continuance in life of the said decedent shall not be forthcoming, it shall be the duty of the court to order the register of wills to issue the letters of administration to the party entitled thereto; and said letters, until revoked, and all acts done in pursuance thereof and in reliance thereupon, shall be as valid as if the supposed decedent were really alive." The 5th section enacts that the court may revoke the letters at any time, on due and satisfactory proof that the supposed decedent is in fact alive, but provides that all receipts or disbursements of assets, and all acts previously done by the administrator, shall remain as valid as if the letters were unrevoked; and, further, that the act shall not validate the title of any person to any money or property received as widow, next of kin or heir of such supposed decedent, "but the same may be recovered from such person in all cases in which such recovery would be had, if this act had not been passed." It will be observed that this provision of the act gives to the living person whose property has been distributed as if he were dead no remedy which he would not have possessed under pre-existing laws. Then follows this provision: "Provided, further, that before any distribution of the proceeds of the estate of such supposed decedent, the persons entitled to receive the same shall respectively give sufficient

real, personal security, to be approved by the orpnans' court having jurisdiction, in such sum and form as the court shall direct, with condition, that if the said supposed decedent shall in fact be at the time alive, they shall respectively refund the amounts received by each on demand with interest thereon; but if the person or persons entitled to receive the same is or are unable to give the security aforesaid, then the money shall be put at interest, on security approved by said court, which interest is to be paid annually to the person entitled to it, and the money to remain at interest until the security aforesaid is given, or the orphans' court, on application, shall order it to be paid to the person or persons entitled to it."

The insufficiency of this provision to secure a return of the property, or its value, to a living person whose estate has been distributed to others, is manifest. The sum and form of the security, as well as its sufficiency, is left to the discretion of the court; there is no requirement that it shall be in excess of the property distributed. The prescribed condition of the bond would require the distributees to refund, " if the said supposed decedent shall in fact be alive at the time; " that is, alive at the time of the distribution. This would leave wholly unprotected the right of the absentee to control and dispose of his property, by a sale or, in case he died after the letters of administration were issued and before the distribution, by his last will and testament. The alternative provision, in case of a failure to give the security in the first instance, is so palpably inadequate that it must tempt all persons who would become distributees under this statute to refuse to enter security, and, without entering into any undertaking to refund, receive the annual payments of interest until such time as they could induce the orphans' court to order that the principal be paid to them, without security.

A state has jurisdiction over persons and property within its boundaries, and may make a law the purpose of which is the collection of abandoned estates, with proper provisions for the preservation of the property or the proceeds thereof for the owner. It has been argued that such is the purpose and effect of the statute now in question, and that it may be sustained upon that ground. The purpose and effect of this statute can only be determined by a consideration of all its provisions. The

act authorizes the orphans' court to decree that the legal presumption of death has been made out ; that decree being entered the statute makes it the duty of the court to order the register of wills to issue letters of administration ; " and the said letters and all acts done in pursuance thereof and in reliance thereupon, shall be as valid as if the supposed decedent were really dead." The whole object in proceedings of administration is to ascertain who are entitled to the estate of a deceased person ; to collect and dispose of the assets, and distribute the proceeds, after payment of debts, among those who come forward and prove themselves to be heirs or next of kin. The 5th section of this act leaves no doubt as to the legislative intent that such distribution should be made in the administration of estates under this statute. The 6th section makes still more clear the purpose of this law that the estate should be administered, collected, rendered liable, and distributed in precisely the same manner as if the absentee were dead. It not only contemplates the bringing of actions by the administrator, for the collection of claims due the estate, but it authorizes the bringing of actions against him by which the estate may be charged. Under the provisions of this section of the statute a judgment might have been recovered against the administrator of this living woman, without other notice than by service of the writ upon such administrator, and upon procuring a revocation of the letters of administration, the plaintiff would have become personally bound by the judgment and it would have become a lien upon her real estate, unless within three months she submitted herself to the jurisdiction of the courts of Pennsylvania and made an application to have the judgment opened, supported by an affidavit specifically alleging the existence of facts which would be a valid defense and satisfied the Pennsylvania tribunal that the facts exhibited constituted a sufficient defense to the action. The controlling factor that the jurisdiction conferred by this statute is not dependent upon the existence of property of the supposed decedent within the state of Pennsylvania or elsewhere, leaves this suggestion of appellant without foundation. The only conditions precedent to the decree are : (1) That the applicant for letters of administration must be the person who would be entitled to administer in case the absentee were actually dead ; and (2) that the court shall be sat-

isfied upon the hearing that the presumption of death is made out. There is no requirement that it shall even be represented to the court, by petition or otherwise, that there is property within the state of which the absentee was the owner or in which he had an interest. Whether the applicant is the person who would be entitled to letters of administration if the supposed decedent were in fact dead is determined under the provisions of the Act of March 15, 1832, P. L. 140, section 22, and is dependent on the relation in which the person stood to the decedent and not upon the existence of property in which the latter had any right. Letters of administration might with all regularity be granted, under the provisions of this statute, upon the estate of a living person who did not own, or claim any property within the state. The only effect of such an administration might be the entry of a judgment, in an action against said administrator, which would become binding upon after-acquired property of the absentee, when he subsequently attempted to set aside the proceeding of which he had had no notice. We are convinced that the purpose of this act, and its effect when carried into execution, is not to preserve property for an absent owner, but to divest his title and give it to others. When the person whose property is thus distributed is actually dead, this statute is a lawful exercise of the legislative power of the state.

Do the provisions of the statute when applied to the estate of a person supposed to be dead, but who is in fact living and a citizen of another state, result in a deprivation of property without due process of law, within the prohibition of the Constitution of the United States? The words " due process of law " mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. " To give such proceedings any validity there must be a tribunal competent by its constitution, that is, by the law of its creation, to pass upon the subject-matter of the suit ; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance : " Pennoyer v. Neff, 95 U. S. 714. No person can be conclusively bound by the result of a judicial proceeding of

which he has had no notice either actual or constructive: The. Lafayette Insurance Co. v. French, 18 Howard, 408. That the publication required by the act of 1885 could not have constituted actual notice, within the meaning of the law, to the plaintiff is conclusively settled by the case of Pennoyer v. Neff, supra.

"The law assumes that property is always in the possession of its owner in person or by agent; and it proceeds upon the theory that its seizure would inform him not only of the seizure, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale." "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for public use. In other words, such service may answer in all actions which are substantially proceedings in rem. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely in personam, constructive service in this form upon a nonresident is ineffectual for any purpose." This language of Mr. Justice FIELD, who spoke for the Supreme Court of the United States in Pennoyer v. Neff, has been repeatedly approved in subsequent decisions by that court. But a decree founded upon such constructive, or substituted service by publication, binds only the property which has been brought under the control of the court by seizure or some equivalent act, through an attachment or other appropriate writ issued in connection with the process against the owner. When the owner has not been served the jurisdiction of the court to enter a decree is only incidental to the jurisdiction which it has acquired over the property by a previous seizure. "Its jurisdiction in that respect cannot be made to depend upon facts to be ascertained after it has tried the cause and rendered the judgment. If the judgment be previously void, it will not become valid by the subsequent discovery of property of the defendant or by his subsequent acquisition of it. The judgment, if void when rendered, will always remain void; it can-

not occupy the doubtful position of being valid if property is found, and void if there be none."

Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who have notice, either actual or by the thing condemned being first seized into the custody of the court: The Mary, 9 Cranch, 126 ; Hollingsworth v. Barbou, 4 Peters, 466. The statute upon which the appellant relies does not authorize a seizure of the property prior to the entry of the decree by which it is proposed to strike down the title of a living person and dispose of his property as if he were dead. The record of the orphans' court does not indicate that there was any seizure of property in this case. The proceeding was therefore not in the nature of an action in rem. No attempt was made to give notice to the plaintiff by a seizure of her property, either actual or constructive, until after the decree had been entered, which if valid would have deprived her of her estate in Pennsylvania. There having been no service of process upon the plaintiff, and the substituted survice by publication being such as has been decided by the court of last resort as insufficient, it follows that the orphans' court of Berks county never acquired jurisdiction over the person or the property of the plaintiff. The plaintiff had no legal notice of the proceeding by which the state of Pennsylvania undertook to divest her title to her estate and give it to others.

Mr. Justice GRAY, in Scott v. McNeal, 154 U. S. 34, adopted the language used by Judge CHOATE, in Lavin v. Emigrant Industrial Savings Bank, 18 Blatchford, 1 : " It is not competent for a state, by a law declaring a judicial determination that a man is dead, made in his absence, and without any notice to or process issued against him, conclusive for the purpose of divesting him of his property and vesting it in an administrator, for the benefit of his creditors and next of kin, either absolutely or in favor of those who only innocently deal with such administrator. . . . Such a statutory declaration of estoppel by a judgment to which he is neither party nor privy, which has the immediate effect of divesting him of his property, is a direct violation of this constitutional guaranty." The vice of the statute is not in the form of the decree which the court is authorized to enter, but in divesting an owner of his property by a

proceeding to which he is not a party and of which he has had no notice. We are of opinion that the Act of June 24, 1885, P. L. 155, in so far as it authorizes the distribution of the estate of a living citizen of the United States, domiciled in a sister state, violates the fourteenth amendment of the constitution of the United States, and is invalid.

The judgment is affirmed.