## Cunnius v. Reading School District, Appellant.

206    469
206    4469
206    469
220    3273

*Constitutional law—Control of property by state—Presumption—Property of absentee—Administrators—Act of June 24, 1885, P. L. 155.*

The regulation of the title and devolution of property within its limits is within the control and jurisdiction of the state.

The rules of evidence for the judicial ascertainment of facts in its courts, and as a corollary, the establishment of legal presumptions, are also within the control and jurisdiction of the state.

The state is not bound to have the regular and lawful use and ownership of property subject to the whim of an individual in absenting himself indefinitely or for a very long period of time from the state.

The Act of June 24, 1885, P. L. 155, entitled " An act relating to the grant of letters of administration upon the estates of persons, presumed to be dead, by reason of long absence from their former domicile," is constitutional.

The appointment of an administrator under the Act of June 24, 1885, P. L 155, is a judicial act by a competent tribunal having jurisdiction of the subject-matter, and therefore cannot be attacked collaterally, but is valid until revoked by direct proceedings as prescribed in the statute.

As the proceedings under the act of 1885 are substantially in rem, for the conservation of property within the jurisdiction of the state, they are due process of law, and the act is constitutional.

Where the intent of a statute is plain, and its administration is committed to a court of known and established jurisdiction and methods under prior laws on similar subject-matters, such court is authorized to adapt its ordinary forms to the new requirements, or to devise and employ new ones of analogous kind suitable to carrying out the intent of the act. The orphans' court is such a court in regard to the act of June 24, 1885.

Argued March 2, 1903.   Appeal, No. 351, Jan. T., 1902, by defendant, from judgment of Superior Court, Oct. T., 1901, No. 48, affirming judgment of C. P. Berks Co., Aug. T., 1899, No. 64, in case of Margaret Cunnius, now Margaret Smith, v, Reading School District.   Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.   Reversed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court and by the report of the case, 21 Pa. Superior Ct. 340.

*Error assigned* was the judgment of the Superior Court.

*Frederick W. Nicolls,* for appellant.

*Caleb J. Bieber,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, July 9, 1903:

The regulation of the title and devolution of property within its limits is within the control and jurisdiction of the state.

The rules of evidence for the judicial ascertainment of facts in its courts, and as a corollary, the establishment of legal presumptions, are also within the control and jurisdiction of the state.

Bearing these two axioms in mind let us examine the act of 1885 which is involved in the present case.   It provides that whenever application shall be made for letters of administration on the estate of any person supposed to be dead on account of absence for seven or more years, the register of wills shall certify the application to the orphans' court, and that court, if satisfied that the applicant would be entitled to such letters were the supposed decedent in fact dead, shall cause advertisement to be made of the application, and on the day fixed shall " hear evidence concerning the alleged absence of the supposed decedent, and the circumstances and duration thereof."   If upon such hearing the court shall be satisfied that the legal presumption of death is made out it shall so decree, and forthwith cause notice to be published in a newspaper of the proper county " and also when practicable in a newspaper published at or near the place beyond the common-

wealth where when last heard from, the supposed decedent had his residence." At the end of twelve weeks from the last insertion of this notice, if no contrary evidence be forthcoming, the court may order the register to issue the letters of administration, " and the said letters until revoked, and all acts done in pursuance thereof, and in reliance thereupon, shall be as valid as if the supposed decedent were really dead." It is further provided that the Orphans' Court may at any time revoke the letters on proof that the supposed decedent is in fact alive, whereupon the administrator shall file his account and turn over the property to the owner, who may also recover any moneys or property received by any person as widow, or next of kin, or heir. And for protection of the owner as to such persons it is required that no distribution shall be made to them until security is given approved by the court, for refunding with interest in case the supposed decedent shall in fact be alive, and in case of inability to give such security the money shall be invested under the control of the court, and the interest only paid to the distributee. Section 6 contains provisions as to suits by or against the administrator, and the substitution of the supposed decedent after revocation of the letters. This section will be referred to later on.

From this summary it appears that the act establishes a system, carefully wrought out with due regard to all rights involved, for the administration of estates or property whose owner is legally presumed to be dead, but whose death cannot at the time be proved with absolute certainty. It is a wise and just statute of sequestration and conservation of property which is without a known owner, whether the late owner has abandoned it (as in the present case) or the title has devolved upon others by his death, not being presently ascertainable. The statute steps in to provide a caretaker and to vest the present benefit in those who appear to be the owners, with as complete provision as is practicable for the re-establishment of the rights and possession of the absentee on his reappearance. That the state must have some such power is manifest. The property is within its jurisdiction and under its protection. It is not in the interests of order or good government that property should lie ownerless or open to conflicting claims. If the absentee be really dead it is conceded that the proceeding

is unimpeachable. But if he be dead, so far as can be learned, though death be not absolutely proved, yet the effect to the state is the same, there is property in its charge without a recognized owner. It must have power to meet such a case or one of its chief functions as a government must go unperformed.

The consequences of a different view are too serious to be disregarded. If an intruder enters on land of the absentee and holds open and hostile possession for twenty-one years, the absentee's title will be gone. So as to personal property of which another holds or acquires wrongful possession for six years. And in the meantime how is the heir or the next of kin, who so far as can be known is the real owner, to assert his right or prevent his title from slipping away before his eyes, unless he may rely upon the presumption? Unless the state can appoint a representative of the unknown owner, whether called administrator, curator or other name is immaterial, such owner's interests must go unprotected. And in appointing such representative the state must be allowed to act upon the presumption, for that is all that can be had in the case. Unless the statute in giving such authority clearly violates rights or transgresses constitutional restrictions, it is our duty to sustain it.

The Superior Court held the act unconstitutional as depriving plaintiff of her property without due process of law, under the fourteenth amendment of the constitution of the United States. In so holding the court felt itself bound by the decision of the Supreme Court of the United States in Scott v. McNeal, 154 U. S. 34.* If that case really governs the present we must, of course, render willing obedience to its supreme authority. But we do not so regard it. The exact point there decided was that a sale by an administrator appointed under a state law for a person who had been absent, unheard of, for seven years, but who was in fact alive, passed no title even to an innocent purchaser. The ground of the decision was that the probate court had no jurisdiction to appoint an administrator for a person who was alive, and there being no jurisdiction over the subject-matter, the appointment of an administrator

---

* Also reported in 14 Sup. Ct. Repr. 1108.—Reporter.

and all the acts done under such appointment were void. This is in entire accord with our own decision in Devlin v. Commonwealth, 101 Pa. 273, which is cited approvingly by Mr. Justice GRAY in his opinion. " The estate of a person supposed to be dead is not seized or taken into custody of the court of probate upon the filing of a petition for administration, but only after and under the order granting that petition ; and the adjudication of that court is not upon the question whether he be living or dead, but only upon the question whether and to whom letters of administration shall issue. The local law on the subject . . . . does not appear to us to warrant the conclusion that the probate court is authorized to conclusively decide, as against a living person, that he is dead, and his estate, therefore, subject to be administered and disposed of by the probate court. On the contrary, that law, in its very terms, appears to us to recognize and assume the death of the owner to be a fundamental condition and prerequisite to the exercise by the probate court of jurisdiction to grant letters testamentary or of administration upon his estate." Id. p. 47. " Under such a statute, according to the overwhelming weight of authority as shown by the cases cited in the earlier part of this opinion, the jurisdiction of the court to which is committed the control and management of the estates of deceased persons, by whatever name it is called, ecclesiastical court, probate court, orphans' court, or court of the ordinary or surrogate, does not exist or take effect before death. All proceedings of such courts in the probate of wills and the granting of administrations depend upon the fact that he is dead, and are null and void if he is alive : " Id. 48. The cases referred to in this extract are numerous, but are founded on the same view that the essential jurisdictional fact for the action of the probate court is the death of the party whose estate is in question. This, as already said, is in exact conformity with our own case of Devlin v. Commonwealth, and with it we have no question.

But our act of 1885 is wholly different in intent and effect. It was passed less than three years after the decision in Devlin v. Commonwealth and is an effort to supply the remedy that such a state of facts as the present requires. Its primary purpose as appears from the preceding summary of its

provisions, is not distribution, but conservation of the estate, through the medium of an officer clothed with authority to protect and enforce the rights of the unknown owner, the absentee if alive, his legal successors if he be dead. The statute did not create the presumption of death, that we inherited with our common law. The probate court in Pennsylvania, in the sense in which it is understood in the cases previously referred to, is, for ordinary cases, the Register of Wills whose jurisdiction as held in Devlin v. Commonwealth depends on the fact of death. But when a case arises of presumption of death from absence, a question of fact is presented, which is essential to the determination of the rights in property whose owner is thus shown to be doubtful. Express jurisdiction is given by the act of 1885 to the Orphans' Court to inquire into and determine judicially that fact. This provision at once takes the case out of the ruling in Scott v. McNeal, and the line of authorities on the same principle, and puts it in the class of Allen v. Dundas, .3 T. R. 125, where payment to the executor in a forged will was held good, because the appointment of the executor was a judicial act by a competent tribunal within its jurisdiction, and though incorrect in fact, as subsequently shown, it was valid until regularly rescinded or reversed, and could not be attacked collaterally. The objection therefore that the court in the present case was without jurisdiction over the subject cannot be sustained.

We have still to consider whether the statute is open to further objection as not due process of law for want of personal service on the absentee. This depends on whether the proceedings under it are regarded as purely in personam or as at least quasi in rem. The leading authority on this point is Pennoyer v. Neff, 95 U. S. 714. It was there held that a general judgment against a nonresident obtained by constructive service by publication is void and a sale under it passes no title. But it was also clearly held that as to property within the jurisdiction of the state, judgments which are substantially directed against such property even though in form in personam, are valid to that extent. "It is true," says Mr. Justice FIELD, " that in a strict sense a proceeding in rem is one taken directly against property, and has for its object the disposition of the property without reference to the title of indi-

vidual claimants; but in a larger and more general sense the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state they are substantially proceedings in rem in the broader sense which we have mentioned."

The proceedings under the act of 1885 conform fully to this standard. The primary object as already said, is the due and orderly conservation of property for the benefit of the unknown or uncertain owner; for present but restricted use by those who appear to be owners, with a saving of the rights of the former owner should it subsequently appear that he is the true owner still. If the statute had provided solely for the latter alternative, and vested a public administrator or other official with authority to collect and preserve the assets for the absentee exclusively, there could be no reasonable objection by the absentee for the whole proceeding would be in his interest. Thus in the present case plaintiff has a dower interest charged on land but if she had stayed away twenty-one years it would have been lost, for the statute of limitations would have barred a recovery notwithstanding her absence during that time. But the statutory administrator has been paid part of it, and so far as appears still has it in hand or secured for her benefit. That is in aid of her right and in no sense in violation of it. But there must be a limit beyond which the state is not bound to have its laws set at defiance by the whim of an individual, and property kept in abeyance as to its ownership. If a child having title to property is taken out of the state and never heard of again, it would be nearly a century before it could be said with certainty that such owner was dead. The state is not bound to have the regular and lawful use and ownership of property subject to such restrictions and uncertainty. If a fair and reasonable provision is made for protection of the owner in case of his reappearance the state has not exceeded its constitutional powers. Such provision as already shown is made by the act, under which no distribution can be made without security for reimbursement to the owner should he be shown to be alive. And the permissive use of the income or the property

itself in the meantime by those who upon the only evidence obtainable appear to be the actual present owners does not render the protection insufficient. Temporary use is a matter clearly within the state's power of regulation. The unreasonbleness of any other view may be illustrated by the present case. Appellant has paid the charge at least in part to the administrator who has the money in hand or secured awaiting plaintiff's claim, yet the latter without resorting to that fund, or proceeding under the statute, demands that defendant shall pay a second time for a mispayment which was plaintiff's own fault.

Returning for a moment to Pennoyer v. Neff, there is another suggestion applicable to the authority of the state. "We do not mean to assert," says Mr. Justice FIELD, "that a state may not authorize proceedings to determine the status of one of its citizens towards a nonresident, which would be binding within the state though made without service of process or personal notice to the nonresident." And this he illustrates by the case of divorce. But if the state has power to determine in this manner the status of its citizens as to whether married or not, it surely has equal power to determine the status of its citizens in respect to property, that of the absentee as to whether he is alive or dead, and that of the resident as to whether he is real owner or only next of kin.

One other consideration is applicable to the present case. The plaintiff was a citizen and resident of this state. She chose to disappear, leaving no trace for eleven years. She was bound to know the law. The state has power to make rules of property, and all owners are bound to conform and abide by them. It might treat absence for seven years as ipso facto an abandonment, and deal with it accordingly. The plaintiff legally knew that if she stayed away twenty-one years the statute of limitations would bar her claim against the defendant, and the reasons for her absence whatever they were would not stop that result; the act of 1885 was in force when she went away and she was equally bound to know that under its provisions the presumption of death might be established and acted upon. By staying away she should be held to have accepted the provisions of the act as a sufficient protection to her rights.

Section 6 of the act, as already mentioned, deals with the subject of suits by the administrator and against him as the representative of the supposed decedent. So far as it may be held to authorize a judgment which shall have the effect of a general judgment in personam against the latter, it may be obnoxious to the constitutional objection that it is not due process of law. It will be time enough to decide such questions when they arise. But even if so much of that section may be void it will not affect the general validity of the act.

Upon this branch of the case therefore we conclude, first that the appointment of an administrator was a judicial act by a competent tribunal having jurisdiction of the subject-matter, and therefore cannot be attacked collaterally, but is valid until revoked by direct proceedings as prescribed in the statute. And, secondly, that as the proceedings are substantially in rem, for the conservation of property within the jurisdiction of the state, they are due process of law and the act is constitutional.

The learned judge of the Common Pleas did not take the same view as the Superior Court upon the constitutionality of the act, but he held it to be ineffective by reason of certain defects or objections. The principal of these were, first, the failure to provide for a suitable bond to be given by the administrator, and therefore the impossibility of exacting security from him; secondly, the absence of provision for vacation of the administration and the carrying out of the testator's directions in case a will is found, whether made before or after the grant of letters; thirdly, the absence of provision for revocation of the administration except on " proof that the supposed decedent is in fact alive, i. e., at the date of the application for revocation;" fourthly, the provision for refunding bonds is only on the same contingency that the decedent shall in fact be alive; and lastly that the act furnishes no power or rule for adapting the practice prescribed by other general statutes in pari materia to the purposes of this one, or for devising new methods suitable to their accomplishment.

The difficulties thus pointed out are not insuperable, nor are any of them serious enough to invalidate the act. Where the intent of a statute is plain and its administration is committed to a court of known and established jurisdiction and methods

under prior laws on similar subject-matters, such court is authorized to adapt its ordinary forms to the new requirements, or to devise and employ new ones of analogous kind suitable to carrying out the intent of the act. The Orphans' Court is such a court in regard to this statute. It exercises jurisdiction over the general subject of decedents' estates and the testamentary and administrative agents in regard to them, and has very ample chancery powers in that regard. The intent of the act of 1885 is plain. When it speaks of an administrator it means an administrator under its own provisions and the bond and security to be given by him must be such as will conform to the intent. The court has full power to so modify the ordinary form of administrator's bond as to execute the intent of the act. Secondly, a will supersedes administration previously granted not merely because of the terms of the bond but by force of its superior authority, and there is no difficulty in applying the same principle under this act whether the will be made before or after the letters issued. In the same way any apparent difficulty in regard to revocation, and the taking of refunding bonds before distribution is easily obviated. The language of the act is that the court "may revoke the said letters at any time on due and satisfactory proof that the supposed decedent is in fact alive." The reasonable construction of this provision in order to carry out the plain purpose of the act is that revocation may (i. e. shall) be made at any time on proof that the supposed decedent is alive then, or was alive at any previous time which ought to work a revocation. Mere proof that he was alive at a subsequent date, whether a month, or a year, or more, later than the issue of letters, but had not been further heard of, might not make any such change of circumstances as to require revocation, while positive proof of his death would properly do so and lead to the issue of new letters in the ordinary course of administration. As already said none of these difficulties are insuperable, and the details may be safely left to be worked out practically as they arise. There are none of them presented in this case.

Judgment reversed and record remitted to the court of common pleas with directions to enter judgment for the defendant non obstante veredicto.