## Locke v. Duff

*Hirsch & Hirsch,* for plaintiff.

*Joseph J. Benedict* and *Clarence O. Devore,* for defendant.

CARSON, J., October 13, 1953.—Melissa Eleanor Locke, on April 2, 1951, filed her petition in the Court of Common Pleas of Washington County, sitting in equity, for the purpose of establishing the death of her husband, Walter Earl Locke, by reason of unexplained absence for more than seven years. A time was fixed for hearing, and, after due notice by publication and the taking of testimony of reputable citizens, a final decree was entered on August 20, 1951, establishing the date of death of Walter Earl Locke to be March 14, 1941. No appeal has been taken from the entry of that decree.

The record shows that the parties were married July 15, 1916, and they purchased a house and lot in the Borough of Donora about April 12, 1919, in which they resided. Title was taken in both names as tenants by

the entireties. Walter Earl Locke, on March 13, 1934 told his wife it was "Goodbye forever", that she would never see him any more, and left. She never again saw him nor heard from him. Melissa Eleanor Locke conveyed the house and lot to Margaret H. Duff on September 7, 1951, and she died on July 4, 1952, more than 18 years after March 13, 1934.

On November 5, 1952, Walter Earl Locke, as plaintiff, filed a complaint in ejectment for the premises against Margaret H. Duff, at November term, 1952, no. 305, claiming title, possession, rents, issues and profits. Defendant filed an answer to the complaint averring, inter alia, that she had acquired title from Melissa Eleanor Locke by deed dated September 7, 1951, and since duly recorded; that by order of the Court of Common Pleas of Washington County in equity, at no. 4923, dated August 20, 1951, Walter Earl Locke was judicially determined to be a presumed decedent; that the date of his death was fixed to be March 14, 1951; that by reason of this decree, Melissa Eleanor Locke became the owner of this real estate by right of survivorship, and that the real estate had been conveyed to Margaret H. Duff for a good and valuable consideration. She denied that Walter Earl Locke was the owner of the premises. Walter Earl Locke filed a motion for judgment on March 6, 1953, averring that defendant had failed to aver a legal defense to plaintiff's complaint.

At the request of counsel, the action in ejectment was consolidated with the proceeding in equity, no. 5049, for argument and adjudication.

Walter Earl Locke, as plaintiff, on November 5, 1952, in equity, at no. 5049, filed a complaint in equity against Margaret H. Duff, individually and as executrix of the estate of Melissa Eleanor Locke, deceased, averring, inter alia, that he was the husband of Melissa Eleanor Locke; that the marriage had not

been terminated prior to her death; that Margaret H. Duff had been duly qualified as executrix of the estate of Melissa Eleanor Locke on August 5, 1952; that the Court of Common Pleas of Washington County, sitting in equity, at no. 4923, entered a decree establishing the presumption of his death without any authority to enter such decree; that he was alive on the date of the presumption of his death established, and is presently alive; that both Melissa Eleanor Locke and Margaret H. Duff had knowledge that plaintiff's domicile was at all times R. D. 3, Huntingdon, Huntingdon County, Pa.; that he received nò notice and had no knowledge of said proceedings, and that there had been a fraudulent conspiracy on the part of Melissa Eleanor Locke and Margaret H. Duff to deprive him of his rights as tenant by the entireties. Complainant now prays that the petition and the decree at no. 4923 in equity be reviewed.

Margaret H. Duff, individually and as executrix of the estate of Melissa Eleanor Locke, filed an answer averring, inter alia, that the decree in equity entered August 20, 1951, was a final decree from which no appeal was taken; that defendant, Margaret H. Duff, had purchased the property for a good and valuable consideration; that notice of the proceeding instituted at no. 4923 in equity was given as required by law; that neither decedent nor Margaret H. Duff had any knowledge of the existence or residence of Walter Earl Locke, and that the proceeding at no. 4923 in equity was not the result of any conspiracy. She averred that the primary purpose of the proceeding was to enable Melissa Eleanor Locke, who was 62 years of age, to sell or encumber the real estate for her maintenance. In further answer she averred that Walter Earl Locke, as a defendant, was ordered by the Court of Quarter Sessions of Washington County to make payments for the support of Melissa Eleanor Locke, after which he absconded, and that he has been

a parole violator since March 13, 1934. Defendant further averred that Melissa Eleanor Locke and Margaret H. Duff have paid the taxes upon and the repairs to the property during the 20 years since Walter Earl Locke absconded.

Counsel for the respective parties attempt to elaborate in their arguments and briefs upon facts not pleaded relative to their alleged equities. Defendant alleges that complainant absconded with another woman, in explanation of the fact that he remained unheard of by his now deceased wife. Defendant also alleges that, within a day or two after Melissa Eleanor Locke died, plaintiff, Walter Earl Locke, appeared at the office of the Register of Wills in this county and took out letters of administration upon her estate, which were revoked upon the probate of her will. This, counsel argues, is proof that, during the 20 years, plaintiff had kept informed concerning the status of his wife.

Plaintiff filed a motion for judgment on the pleadings in the equity proceeding. The two motions for judgment, at the request of counsel, came before the court en banc, and will be considered and disposed of in this opinion. The contentions of the parties were well argued and briefed by counsel.

### Discussion of the Law

The absconding, parole-violating husband, for obvious reasons chose neither to return nor to disclose his whereabouts during the lifetime of his now deceased wife. Within two days of her death he returned and attempted to grasp and administer her estate, but was prevented from proceeding with such administration by the probate of her will. He now begins action of ejectment and seeks relief in equity, averring that his deceased wife had conspired to defraud him.

We shall attempt to determine from this maze of legal proceedings and admitted facts his rights and

equities for the purpose of the present proceedings. It would appear that this may be unnecessary. The 20-year desertion and abscondence of plaintiff, and the resulting default in the payment of orders made upon him by the criminal court of this county, have probably produced an accumulation of indebtedness in favor of the deceased wife's estate in excess of the value of any interest which plaintiff would have in the property.

Counsel for plaintiff frankly admits that final decrees in equity are not subject to rehearing later than the time for taking an appeal, which is limited to three months: 12 PS §1136. Counsel further admits that bills for review as an equitable remedy are defined and limited by equitable principles, are relatively uncommon, and are addressed to the discretion of the court in the first instance: 8 Standard Pa. Practice 285. The courts have uniformly held that the entertaining of such bill of complaint is within the discretion of the court only after plaintiff makes out a case of fraud, coercion, perjury, gross mistake, or after-discovered evidence, and is not merely as a matter of grace. Even the court in the first instance cannot reform a final decree where the rights of third persons intervene: Ladner v. Siegel (No. 4), 298 Pa. 487, and Benedum v. Glenn, 77 Pitts. L. J., 102, in which latter case it was held that, before opening a final decree, the court must have before it clear convincing and precise evidence that the prior decree was predicated upon false testimony, or that there was a fraudulent imposition upon the court, and that the facts withheld preclude a decree upon the merit.

It would appear that plaintiff, when his wife is no longer here to testify against him or prosecute him, at this late date, wishes to substitute a bill of review for the exceptions and appeal which he could have used in due course to have protected his rights, if any.

Plaintiff has violated so many of the equitable principles that it would not seem necessary to review at length the legal questions which he now attempts to raise in his behalf. He has not been diligent, but has delayed some 20 years in the assertion of his rights. His unexplained absence following his conviction and sentence in criminal court, and his failure to pay the order made against him for the support of his wife, conclusively show that he does not come into court with clean hands. His failure to state an account of his indebtedness to the estate of his now deceased wife and balance his indebtedness due to the estate by reason of the 20-year accumulation of court orders against him, his failure to credit his deceased wife's estate with the taxes, maintenance and improvements she has made upon the property, all show that he is not a plaintiff who seeks equity jurisdiction by first doing the equitable things required of him.

We will briefly discuss some of the contentions raised by plaintiff. First, that the orphans' court has sole jurisdiction. Neither the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.1201, nor the Revised Price Act of June 7, 1917, P. L. 388, 20 PS §1561-1563, provides an exclusive remedy for establishing the presumption of death. The Fiduciaries Act is a gradual enlargement of the original Act of 1885, P. L. 155, which has been amended at various times. The courts have always recognized as a part of the common law the right of the courts of common pleas and the courts of equity to adjudicate and presume death of a decedent. In the case of Maley, Executrix, v. Pa. R. R. Company, 258 Pa. 73, 77, it was held:

" . . . We find nothing in the act, however, indicating an intention on the part of the legislature to confer upon the Orphans' Court exclusive jurisdiction of the determination of the fact of death by reason of absence. This question may, and frequently does, arise

in collateral proceedings where the object is not to distribute the estate of the absentee, and where the court has complete jurisdiction of the subject-matter, as in the present case. In such cases no necessity exists for taking out letters of administration on the estates of the absentees, and no adequate reason appears for holding that a court of competent jurisdiction should delay matters pending before it for the purpose of awaiting an application for appointment of an administrator by the Orphans' Court, merely to determine whether or not certain facts warrant a presumption of death of the absentee, who may in fact have no estate to administer, at least so far as the pending proceeding in the Common Pleas is concerned. . . . The act, however, contains no indication of an attempt upon the part of the legislature to confer on the Orphans' Court exclusive jurisdiction and to take from the Common Pleas jurisdiction to determine all questions of fact arising in a proceeding pending before that court, and over which its jurisdiction is undoubted, and jurisdiction of the subject-matter carries with it jurisdiction to decide every incidental question necessarily involved."

In the case of Horton v. Horton et al., 32 Erie 48 (1947), Judge Laub, writing the opinion for the court in a partition proceeding against a defendant whose absence was unexplained for seven years, said:

"There seems but little doubt that we have jurisdiction to declare, in this proceeding, whether Samuel Horton is living or dead. In Maley v. Penna. R. R. Co., supra, it was decided that the Act of June 24, 1885, P. L. 155 (forerunner of the present law, Act 1917, June 7, P. L. 447, Section 6a, as amended August 5, 1941, P. L. 836, 20 P. S. p. 371, giving the Orphans' Court jurisdiction in cases involving presumed decedents) did not deprive the Court of Common Pleas of the

right to declare a person dead after an unexplained absence of seven years. The English rule 'that, in the case of an absent person of whom no tidings are received, the presumption of the continuance of life ceases at the end of seven years,' has long been the law of Pennsylvania: Burr v. Sim, 4 Wh. 150; Groner v. Knights of Maccabees, 265 Pa. 129. The operation of the presumption in a bill in equity for partition has already been applied in a case somewhat similar to the one at bar: Baker v. Fidelity Title & Trust Co., 55 Pa. Superior Ct. 15. To hold that we must await action and judgment by the Orphans' Court before proceeding in a matter where the presumption arises would be to unnecessarily inactivate the processes of Common Pleas. Moreover, such a decree by the Orphans' Court, while having probative value before us, would not be conclusive: Wiggins v. W. & S. Life Ins. Co., 114 Pa. Superior Ct. 198.''

In McCausland Estate, 213 Pa. 189, the court sustains the legality of a marriage contract, being a common-law marriage based upon the presumption of death arising after an unheard of absence for seven years. In that case, as in this, title to real estate depended upon the presumption established in common pleas court.

There are many cases where action has been brought in common pleas court to recover life insurance based on seven years' unheard of absence: Groner v. Supreme Tent of the Knights of the Maccabees of the World, 265 Pa. 129; Kimple v. Standard Life Insurance Company, 53 D. & C. 174; McNulty v. General American Life Insurance Company, 153 Pa. Superior Ct. 288—this latter case was a trial in common pleas court, without a jury before the judge, wherein plaintiff relied upon the common-law presumption that the death of her husband had arisen after an unexplained absence for seven years.

In Wesner's Estate, 139 Pa. Superior Ct. 314, 317, the court held:

"Conserving the property and not distribution of the estate is the primary purpose of the Act. The proceeding, therefore, is in rem and not in personam: Cunnius v. Reading School District, 206 Pa. 469, 56 A. 16. . . . The entry of the decree declaring Wesner a presumed decedent and appointing an administrator of his estate was a judicial act by a competent tribunal having jurisdiction of the subject-matter and that decree is valid until revoked in the manner prescribed by statute."

The courts, notwithstanding the Fiduciaries Act, have frequently held that the orphans' court has no jurisdiction to find the presumption of death of a person unheard of for more than seven years, unless and until such matter becomes an issue in the orphans' court, i.e., unless and until claimant seeking to establish the presumption of death claims under or from the missing person: (Section 1201, Fiduciaries Act) Payne's Estate, 11 D. & C. 693.

The right to exercise jurisdiction by a bill of review in a court of equity should be limited to the reasons before stated. To extend such jurisdiction as is here sought, would leave open to attack final decrees affecting titles to real estate, divorce and legitimacy of children. It would also encourage the production of false evidence to set aside long-standing decrees, when it might have become difficult, if not impossible, owing to the death and absence of parties and witnesses, and the destruction or disappearance of records, to produce the required evidence to establish the true facts.

No sufficient cause having been shown for review, the following order is entered in the respective cases in the Court of Common Pleas of Washington County: No. 5049, in Equity, and November term, 1952, no. 305.

*Order*

And now, to wit, October 13, 1953, after consideration of the pleadings, the arguments and briefs of counsel, plaintiff's motion for judgment on the pleadings is dismissed.